**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **LINDA A. CLARK, et al.,** ) | **Case No.  1:12-CV-2187** |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Judge Dan Aaron Polster** |
| **v.** ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| **LENDER PROCESSING SERVICES,** ) | **ORDER** |
| **INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

Before the Court are the following: (1) Defendant Manley Deas Kochalski LLC's

("MDK")[1] Motion to Dismiss the Second Amended Complaint ("SAC") (**Doc. # 51**), (2),

Defendants Lender Processing Services, Inc., LPS Default Solutions, Inc., and DocX LLC's

(collectively, "LPS")[2] Motion to Dismiss the SAC (**Doc. # 53**) and (3) Defendant Lerner,

Sampson & Rothfuss' ("LSR") Motion to Dismiss the SAC (**Doc. # 58**).  The LPS Defendants

filed a Partial Joinder in MDK's motion to dismiss (Doc. # 56).  Plaintiffs filed a single

Opposition brief opposing both MDK and LSR Defendants' motions to dismiss (Doc. # 65), and

an Opposition brief to LPS Defendants' motion to dismiss (Doc. # 63).  All Defendants filed a

consolidated Reply in Support of their Motions to Dismiss (Doc. # 69).  The parties also filed

notices of supplemental authorities (Doc. #s 70-75).  The Court has reviewed the motions,

---

[1]MDK and LSR are referred to as "law firm defendants."

[2]LPS defendants are referred to as "loan processing defendants."

opposition and reply briefs, and notices of supplemental authorities.  Defendants ask the Court to dismiss Plaintiffs' class action complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  For the following reasons, the motions to dismiss are granted.

I.      **Factual Background**

On December 7, 2012, four sets of Plaintiffs, Linda A. Clark ("Clark"), John Whiteman ("Whiteman"), Michael and Dorothy Rysh (collectively, "Rysh"), and Laura and Michael Yeager (collectively, "Yeager") filed their SAC (Doc. # 46) against Defendants.  Plaintiffs claim that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count I) and the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345 *et seq.* (Count II).  Plaintiffs also seek injunctive relief against Defendants (Count III).  On February 27, 2013, Plaintiffs moved to dismiss (1) Clark's FDCPA claim as to all Defendants, (2) Whiteman's FDCPA claim as to all Defendants, and (3) all of Yeager's claims as to all Defendants.  (Doc. # 61).  The Court granted Plaintiffs' motion to dismiss certain claims in the SAC.  (Doc. # 62).  The claims that remain pending are:

- Count I, FDCPA:  Rysh

- Count II, OCSPA:  Clark, Rysh, Whiteman

- Count III, Injunctive Relief:  Clark, Rysh, Whiteman

Each of the named Plaintiffs are individuals whose homes were foreclosed in cases where it appears beyond dispute that the mortgage assignments, affidavits, and transfers were fabricated by one or more of the loan processing Defendants, and the financial institutions bringing the foreclosure actions were represented by one of the law firm Defendants.  Plaintiffs bring a

-2-

putative class action claiming that Defendants violated the FDCPA and OCSPA by filing state court foreclosure lawsuits on behalf of trustees of securitized trusts.  Plaintiffs' theory of the case is that the foreclosing trusts lacked standing to bring foreclosure actions against Plaintiffs because (1) the transfer of their mortgages to non-party securitized trusts did not comply with the alleged deadlines in the applicable Pooling and Servicing Agreements ("PSAs")[3], and (2) Defendants conspired to create the appearance of standing, after the trusts had lost standing, by using allonges to notes, mortgage assignments, and other mortgage documents that were defectively executed, thereby breaking the chain of title.  Plaintiffs bring this action on behalf of a proposed class consisting of:

> All Ohio homeowners who were (a) defendants in judicial foreclosure actions on first lien mortgages that were purportedly held by securitization trusts, and that were knowingly initiated and prosecuted by Defendants on behalf of parties that lacked legal standing to do so, and (b) who were damaged by Defendants' abusive debt collection practices, including: (i) preparing, executing, and notarizing fraudulent court documents and assignments of mortgages and other property records that were used to initiate and prosecute such foreclosures, and (ii) imposing inflated, unfair, unreasonable and/or fabricated fees for "default management services" (the "Class").

 (SAC, ¶ 1).

Plaintiffs allege that "[t]wo categories of defendants acted in concert and conspired in furtherance of the fraudulent scheme to generate enormous profits from default servicing fees by knowingly initiating foreclosure actions on behalf of entities that lacked standing to bring such actions."  (SAC, ¶ 2).  The first category of Defendants is the loan processing Defendants, LPS.

---

[3]In general, a PSA is an agreement creating a trust that defines the terms under which promissory notes and related loan documents are transferred by and between the parties to the trust, and sets forth various responsibilities of the parties to the trust.  *See e.g., In re Smoak*, 461 B.R. 510, 515 (Bankr. S.D. Ohio 2011).

Plaintiffs allege that the loan processing defendants are "vendors or sub-servicers to the vast majority of national mortgage services to manage all default servicing for those servicers." (*Id.*) The second category of Defendants is an alleged network of law firms, here MDK and LSR. Plaintiffs allege that law firm Defendants "specialize in prosecuting a high volume of foreclosure cases, and are commonly known as 'foreclosure mills.'" (*Id.*) Plaintiffs allege that the law firm Defendants entered into a "Network Agreement" with LPS which "requires these law firms to pay *quid pro quo* consideration to LPS for referrals of foreclosure cases and other default related matters . . ." (*Id.*) Plaintiffs further allege that law firm Defendants "were not only retained by defendant LPS, they were also supervised and directed by LPS, and knowingly used forged and fabricated documents created by or at the direction of LPS and/or its subsidiaries." (*Id.*)

The SAC describes the national housing collapse, the mortgage foreclosure crisis, and the role of LPS Defendants who allegedly fabricated mortgage assignments, fraudulently endorsed affidavits, backdated mortgage transfers and did whatever was necessary to support standing for its clients (i.e., the financial institutions bringing foreclosure actions against defaulting mortgagors). The SAC also describes the role of the law firm Defendants who allegedly paid the LPS Defendants for foreclosure referrals and allegedly knew or should have known these standing-supporting documents were fabricated and their clients lacked standing. The crux of Plaintiffs' allegations is as follows:

> The Defendants have engaged in a widespread conspiracy to deceive the Ohio courts and borrowers by engaging in unfair and deceptive debt collection practices, including fabricating thousands of mortgage assignments and affidavits. **These fraudulent documents purported to establish the required intervening note endorsement and transfers of the mortgages to the trusts, thereby giving the illusion of "standing".** If these transfers had actually occurred on the dates the documents were fabricated, they would have been void inasmuch as they were not made pursuant to the terms of the governing documents and the Trustees were

not permitted to accept late and out of time assignments.

In furtherance of this deceptive scheme, from at least 2006 until the present, Defendants have knowingly and intentionally prepared and filed or caused to be filed these fabricated mortgage assignments and other mortgage documents with courts and county recorder of deed's office across the country, including in Ohio, and have produced them to borrowers across the nation, including in Ohio.

From at least 2006 to the present, LPS and its network of law firms have used these fabricated note indorsements, mortgage assignments and affidavits to conceal the fact that the trusts, which purport to hold the notes and mortgages, are missing critical documents, namely, properly endorsed notes and valid mortgage assignments that were supposed to have been delivered to the trusts within 90 days of the closing of the trust.

These note endorsements and mortgage assignments were materially false and misrepresented that Defendants' clients had standing to foreclose when they did not. Defendants knew or should have known of the falsity of the representations in these documents, yet Defendants used these fabricated documents to foreclose on Ohio homeowners, with the intent to deceive borrowers and the courts who justifiably believed that these fabricated and forged documents were valid.

 (SAC, ¶¶ 11-14) (emphasis in original).

Plaintiffs allege that many of the Ohio homeowners who comprise the Class were

unaware that the documents were forged and that the foreclosing parties lacked standing.

Plaintiffs allege that, as a result, homeowners have lost their homes in foreclosures initiated and

prosecuted by Defendants. Further, Plaintiffs allege that "thousands of Ohio homeowners have

been wrongfully required to defend frivolous foreclosure actions and have incurred substantial

legal fees and inflated and/or fabricated foreclosure-related fees charged by Defendants when the

plaintiff lacked the standing to institute the foreclosure proceedings against them in the first

instance." (SAC, ¶¶ 15, 16). In sum, Plaintiffs claim that the above-described "unfair and

deceptive debt collection practices violate the FDCPA and the OCSPA and have been

perpetrated on an institutionalized basis through the knowing participation and coordination of each Defendant."  (SAC, ¶ 17).

### A.    Plaintiff Linda A. Clark

On April 21, 2011, LSR Defendant filed a foreclosure complaint in the Cuyahoga County Court of Common Pleas on behalf of "The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee for RASC 2004KS7" against Linda Clark (Case No. 11cv753664).  LSR filed an amended complaint in foreclosure on May 9, 2011.  (See SAC, Exhibit J).  The court found that plaintiff failed to establish standing and dismissed the case without prejudice.

### B.    Plaintiff John Whiteman

On February 23, 2011, MDK Defendant filed a foreclosure complaint in the Franklin County Court of Common Pleas on behalf of its client, Deutsche Bank against John Whiteman (Case No. 11cv2422).  (See SAC, Exhibit K).  Whiteman failed to file an answer to the complaint and MDK filed a motion for default judgment.  On July 18, 2011, the court entered a default judgment and decree in foreclosure against Whiteman.  Whiteman moved to vacate the default judgment claiming that Deutsche Bank lacked standing to bring the foreclosure complaint. Whiteman alleged that the assignment of the mortgage was ineffective because it allegedly did not follow the requirements of the applicable PSA that established the trust that held the mortgage.  On June 11, 2012, the court denied Whiteman's motion to vacate the default judgment and to dismiss the foreclosure complaint.  In doing so, the court held that Deutsche Bank had standing to bring the foreclosure action.  Whiteman appealed the decision to the Tenth District Court of Appeals of Ohio.  On April 23, 2013, the Court of Appeals affirmed the trial

-6-

court's decision denying Whiteman's motion to vacate the default judgment and to dismiss the foreclosure complaint.  (See Doc. # 70).

### C.  Plaintiffs Michael and Dorothy Rysh

On January 20, 2012, MDK filed a foreclosure complaint against the Rysh Plaintiffs, on behalf of its client, Deutsche Bank, in the Cuyahoga County Court of Common Pleas (Case No. 12cv77046).  (See SAC, Exhibit M).  Rysh Plaintiffs filed a motion to dismiss the foreclosure complaint asserting similar arguments to those in the SAC.  The court denied the motion to dismiss.  On November 30, 2012, Rysh Plaintiffs filed an answer and counterclaims against Deutsche Bank.  The Cuyahoga County Court of Common Pleas docket reflects that the Rysh Plaintiffs and Deutsche Bank reached a settlement.  On May 28, 2013, the parties filed a stipulated dismissal pursuant to Ohio Civ. R. 41(A)(1)(B).

## II.  Standard of Review

A 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Doe v. Simpson*, No. C-1-08-255, 2009 WL 2591682, at *1 (S.D. Ohio Aug. 19, 2009) (quoting *Twombly*, 550 U.S. at 555).

III.    **Analysis**

A.      **Plaintiffs Lack Standing to Challenge the Validity of Assignments of Notes and Mortgages**

As a threshold issue, Defendants argue that Plaintiffs lack standing to assert any claim under the FDCPA or OCSPA based on allegedly faulty assignments of the notes and mortgages into the PSAs because Plaintiffs are not parties to the agreements.  (Doc. # 53, p. 4, Doc. # 58, pp. 6-21).[4]  Defendants rely on the proposition that a non-party to a contract does not have standing to enforce a contract and that a borrower lacks standing to challenge an assignment of a note or mortgage.  *See Deutsche Bank Nat'l Trust Co. v. Rudolph*, 2012 Ohio 6141, at ¶ 24 (Ohio Ct. App. 8th Dist. Dec. 27, 2012) ("to the extent that Rudolph sought to establish that Deutsche was not the holder of the mortgage on the grounds that the transfer occurred in violation of a PSA or the Indenture Agreement, Rudolph has no standing to raise such an argument"); *Bridge v. Aames Cap. Corp.*, 2010 WL 3834059, at *3 (N.D. Ohio Sept. 29, 2010); *Ogle v. BAC Home Loans Servicing LP*, 2013 WL 592303, at *4 (S.D. Ohio Feb. 14, 2013) (Doc. # 53, pp. 4-5; Doc. # 69, p. 4).  LSR Defendant asserts that the "overwhelming majority of courts, state and federal, hold that borrowers lack standing to challenge transfers of their notes and mortgages, as well as compliance with pooling and servicing agreements."  (Doc. # 58, p. 7).  LSR Defendant cites to, and the Court notes, various decisions in support of Defendants' standing argument to show that "(1) a borrower cannot be harmed by the transfer of a note and mortgage from one holder to another because the borrower owes the debt regardless of which entity is the holder, and the borrower is protected if he should pay a holder mistakenly; and (2) any alleged flaw in the

_____

[4]MDK Defendant joins in LPS Defendants' motion to dismiss (Doc. # 53).  (See Doc. # 51).

transfer of the note and mortgage, or compliance with the PSA, is not a defense to enforceability of a defaulted note under the U.C.C." (Doc. # 58, p. 7).

In response, Plaintiffs argue that they do not seek to enforce a contract. Plaintiffs rely on the district court's opinion in *Livonia Props. Holdings, LLC v. Farmington Road Holdings*, 717 F. Supp. 2d 724, 735-37 (E.D. Mich. 2010), *aff'd*, 399 Fed. Appx. 97 (6th Cir. 2010), *cert. denied*, 131 S.Ct. 1669 (2011), where the court observed that a debtor may raise a defense to an assignment that would render the assignment "absolutely invalid." *Id.* at 736 (citing 6A C.J.S. *Assign*. §132 ("A debtor may, generally, assert against an assignee all equities or defenses existing against the assignor prior to notice of the assignment, any matters rendering the assignment absolutely invalid or ineffective, and the lack of the plaintiff's title or right to sue . . .")) The district court, however, held that a non-party to the assignment documents lacks standing to challenge the validity of those assignment documents. *Livonia*, 717 F. Supp. 2d at 735. In finding that the borrower lacked standing to contest the assignment documents in an attempt to avoid foreclosure, the court stated:

> Borrower certainly has an interest in avoiding foreclosure. But the validity of the assignments does not effect *whether* Borrower owes its obligations, but only *to whom* Borrower is obligated. . . .
>
> Borrower may not challenge the validity of assignments to which it was not a party or third-party beneficiary, where it has not been prejudiced, and the parties to the assignments do not dispute (and in fact affirm) their validity.

*Id*. at 735-37 (emphasis in original).

It is curious that Plaintiffs rely on *Livonia*. Indeed, as noted by LSR Defendant, on appeal the Sixth Circuit held that a borrower lacks standing to challenge a creditor's ability to foreclose based upon the creditor's alleged failure to comply with a pooling and servicing

-9-

agreement.  399 Fed. Appx. 97, 102.  In affirming the district court's holding that the borrower

lacked standing, the Sixth Circuit explained:

> Livonia also asserts that Farmington must prove that the assignment between
> Lehman Brothers and the Trust is legally valid in order for Farmington's chain of
> title to be valid.  Livonia contends that the assignment from Lehman Brothers to
> the Trust may be invalid because the Trust did not actually exist as of January 6,
> 2005, the date entered on the transfer instrument.  Livonia bases this claim on the
> PSA, which created the Trust but was not executed until February 8, 2005.  The
> argument, as articulated on appeal, is that the Trust could not have actually
> received the mortgage on January 6, 2005, and as a result, the assignment was
> invalid, making the record chain of title invalid.  As a preliminary matter, Livonia
> has presented no authority for the proposition that the record chain of title is
> destroyed by an irregularity affecting the validity of a transfer.  Even if the
> transfer was invalidated, the public record would remain as it is, and the record
> chain of title would not be disturbed.
>
> Regardless of this point, **even if there were a flaw in the assignment, Livonia
> does not have standing to raise that flaw to challenge Farmington's chain of
> title**.  As recognized by the district court, there is ample authority to support the
> proposition that "**a litigant who is not a party to an assignment lacks standing
> to challenge that assignment**."

*Id*. (emphasis added, internal citation omitted).

LSR Defendant asserts that *Livonia* (in addition to several other federal and state court

cases cited in all Defendants' briefs) requires the Court to rule that Plaintiffs lack standing to

assert any claim based on allegedly faulty assignments of the notes and mortgages into the PSAs

because Plaintiffs are not parties to the agreements.  (Doc. # 58, pp. 7-21).  The Court agrees.  As

the Sixth Circuit held, "even if there were a flaw in the assignment, [Plaintiff] does not have

standing to raise that flaw to challenge [the] chain of title."  *Livonia*, 399 Fed. Appx. 97, 102.

"[A] litigant who is not a party to an assignment lacks standing to challenge that assignment."

*Id*.  Based on *Livonia*, the Court holds that Plaintiffs lack standing to challenge the allegedly

faulty assignments relating to the mortgages.  Because Plaintiffs are not parties to the PSAs, they

-10-

lack standing to assert any claim under the FDCPA or OCSPA. Accordingly, the SAC is dismissed.[5]

>       **B.**     **Plaintiffs' Claims are Barred as a Collateral Attack and by Res Judicata**

LPS and MDK Defendants argue that even if the Court finds that Whiteman and the Rysh Plaintiffs have standing to challenge the faulty assignments relating to the mortgages, the Court should dismiss those Plaintiffs' claims as an improper attempt to attack collaterally the foreclosure actions that were filed against them[6].  Defendants assert that the SAC is an improper collateral attack on prior litigation.  The Court agrees.

The Ohio Supreme Court has defined a collateral attack as "an attempt to defeat the operation of a judgment, in a proceeding where some new right derived from or through the judgment is involved." *JGR, Inc. v. Thomasville Furniture Indus.*, 2012 U.S. App. LEXIS 23408, *9-10 (6th Cir. 2012) (citing *Ohio Pyro, Inc. v. Ohio Dep't of Commerce*, 115 Ohio St. 3d 375, 2007 Ohio 5024, ¶ 8 (Ohio 2007)).  "[T]here is a firm and longstanding principle that final judgments are meant to be just that--final." *Ohio Pyro, Inc.*, 2007 Ohio 5024, ¶ 8.  "[S]ubject to only rare exceptions, direct attacks, i.e., appeals, by parties to the litigation, are the

---

[5]The Court does not address whether Defendants had standing to bring the underlying foreclosure actions against Plaintiffs.  As a threshold matter, the Court determines that Plaintiffs lack standing to challenge the alleged faulty assignments of the notes and mortgages into the PSAs.  Because the Court holds that Plaintiffs lack standing to bring the claims in the SAC, the Court need not address whether Defendants had standing to bring the foreclosure actions.  Further, the Court notes that arguments relating to whether Defendants had standing to bring the foreclosure actions were or could have been raised by Plaintiffs in the underlying foreclosure actions.

[6]As to Clark, based upon a failure to show a proper chain of assignments, the state court dismissed the underlying foreclosure complaint without prejudice.  Clark has not received a final judgment on the merits.  The Court addresses the collateral estoppel and res judicata arguments only as to Whiteman and the Rysh Plaintiffs.

primary way that a civil judgment is challenged." *Id*.  Thus, "collateral or indirect attacks are

disfavored[.]" *Id*.; *Davet v. Fed. Nat'l Mortg. Assoc.*, 2012-Ohio-3575, ¶ 8 (Ohio Ct. App. 8th

Dist. Aug. 9, 2012).  Collateral attacks are only permitted when the first court lacked

jurisdiction, or in circumstances involving fraud.  *Id*.; *Ohio Pyro,* 115 Ohio St. 3d at 380.  Here,

the SAC does not assert a fraud cause of action.  (Doc. # 46).[7]

Contrary to Plaintiffs' assertion, a party need not seek to overturn a final judgment in

order to constitute a collateral attack.  *See JGR, Inc.*, 2012 U.S. App. LEXIS 23408, *9-10

(defining a collateral attack as "an attempt to defeat the operation of a judgment, in a proceeding

where some new right derived from or through the judgment is involved.")  (internal citation

omitted).  Thus, Ohio courts prohibit a subsequent collateral attack on prior or pending litigation

that addresses the same issues.

For example, in *Davet*, the court held that a borrower could not collaterally attack the

final judgment of foreclosure.  2012 Ohio 3575 at ¶ 8.  In *Davet*, the plaintiff argued that in the

underlying foreclosure action, the foreclosing plaintiff lacked standing.  On appeal, the court

determined that an attack on the final judgment of foreclosure based on the alleged lack of

plaintiff's standing in the foreclosure action was an improper collateral attack.  *Id*.

Here, Whiteman and the Rysh Plaintiffs have already raised the issues presented in the

SAC in their state court foreclosure actions.  Whiteman and the Rysh Plaintiffs allege that due to

document execution practices purported to be employed by the LPS Defendants, Plaintiffs "were

deprived of the opportunity to challenge the basis of the foreclosing banks' standing to foreclose

---

[7]In their original complaint filed in the Cuyahoga County Court of Common Pleas,
Plaintiffs asserted a fraud cause of action.  (Doc. # 7-1).  In their first amended complaint,
Plaintiffs only asserted OCSPA and injunctive relief claims.  (Doc. # 7-2).

on their homes." To the contrary, Whiteman and the Rysh Plaintiffs raised identical claims in their underlying foreclosure actions. In state court, the Rysh Plaintiffs alleged that the assignments attached to the foreclosure complaint evidenced that the Pooling and Servicing Agreement was violated and that no transfer of the Rysh's mortgage could legally occur. (Doc. # 51, Ex. 4, p. 4). The Rysh Plaintiffs contended that the mortgage assignment was "invalid", thereby depriving the foreclosing lender of standing to foreclose. *Id.* They filed a motion to dismiss the foreclosure complaint based on the same arguments raised in the SAC. The court denied the motion to dismiss. On May 28, 2013, the Rysh Plaintiffs and Deutsche Bank reached a settlement and stipulated to a dismissal pursuant to Ohio Civ. R. 41(A)(1)(B). Accordingly, the Rysh Plaintiffs' claims in this case represent an impermissible collateral attack on the foreclosure proceedings.

Whiteman also already asserted the arguments raised in the SAC to challenge the foreclosing plaintiff's standing to foreclose. (Doc. # 51, Ex. 5, 6-11-12 Decision Denying Whiteman's Motion to Vacate the Default Judgment). Whiteman has argued in state court that the foreclosing trusts lacked standing because the notes and mortgages were transferred in violation of the PSA, or that those documents were allegedly robo-signed. The Franklin County Court of Common Pleas denied Whiteman's motion to vacate the default judgment against him and to dismiss the foreclosure complaint. The court specifically held that Deutsche Bank had standing to bring the foreclosure action. On appeal, the Tenth District Court of Appeals of Ohio affirmed the trial court's decision denying Whiteman's motion to vacate the default judgment and to dismiss the foreclosure complaint. (See Doc. # 70).

Now, in federal court, Whiteman claims that Defendants have violated the FDCPA and

-13-

OCSPA because the foreclosing entities lacked standing.  But, these standing arguments have been previously adjudicated in state court and denied.  Thus, this Court finds that Whiteman's claims are precluded as a collateral attack.

Defendants also argue that Whiteman's claims are barred by res judicata.  The Court agrees.  The doctrine of *res judicata* provides that "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in a prior action."  *Alfes v. Educ. Credit Mgmt. Corp.*, 709 F.3d 631, 638 (6th Cir. 2013).  To establish the defense of *res judicata*, Defendants must meet four elements:

> (1) a prior, final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action rasing claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (dismissing claims under *res judicata*).

First, there is a prior, final decision on the merits with respect to Whiteman's underlying foreclosure action.  The Tenth District Court of Appeals of Ohio affirmed the trial court's decision denying Whiteman's Rule 60(b) motion to vacate the default judgment and to dismiss the foreclosure complaint against him.  (See Doc. # 70).  Thus, the underlying foreclosure action against Whiteman has resulted in a final judgment on the merits.  *See Thomas v. Thistledown, Inc.*, 2009 U.S. Dist. LEXIS 17352, *22-23 (N.D. Ohio Feb. 20, 2009) (denial of a Rule 60(b) motion is a final judgment for purposes of *res judicata* and collateral estoppel).

Second, for the purposes of a motion to dismiss, the Court is satisfied that MDK was in privity with Whiteman in the underlying foreclosure litigation.

-14-

Third, as discussed above, the SAC raises claims that were or could have been litigated in Whiteman's underlying foreclosure action.

Fourth, Whiteman's claims in the SAC arise out of the transaction or occurrence that was the subject matter of the underlying foreclosure action. Here, Whiteman alleges that the foreclosing trusts lacked standing to sue as the transfers of the mortgage documents or notes were ineffective because: (1) the transfer violated the terms and conditions of the applicable PSAs; or (2) they were "robo-signed," rendering the assignments defective. (SAC, ¶¶ 182-89). Whiteman raised the same arguments in the underlying foreclosure action. The Court determines that Whiteman's claims in the SAC are precluded under *res judicata*.[8]

### C.     FDCPA Claim

Only the Rysh Plaintiffs bring a claim under the FDCPA. Even if the Rysh Plaintiffs had standing and their claim was not an impermissible collateral attack, the FDCPA claim would still fail. The Rysh Plaintiffs allege that LPS and MDK Defendants "seek or have sought to collect from Plaintiffs [a] consumer debt within the meaning to the FDCPA, and Defendants are debt collectors as defined therein." (SAC, ¶ 267). Plaintiffs allege that Defendants' actions violate 15 U.S.C. § 1692f by "using unfair or unconscionable means to collect debts from Plaintiffs" and 15 U.S.C. § 1692e by "sending Plaintiffs communications and filing with the courts and county

---

[8]MDK Defendant requests that absent an outright dismissal, the Court stay the proceeding here pending resolution of the state court actions against Whiteman and Rysh, under the Colorado River abstention doctrine. *See Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976). (Doc. # 51, pp. 3-7). LPS Defendants decline to join in MDK's abstention argument. (Doc. # 56, pp. 1-2). First, the Court notes that in light of the April 23, 2013 Ohio Court of Appeals decision in Whiteman's state court case and the Rysh Plaintiffs' May 28, 2013 stipulated dismissal of their state court action (as discussed above), MDK's request is moot. Second, as held above, the Court dismisses the SAC and thus need not abstain from exercising jurisdiction over this matter.

recorders' offices false, deceptive or misleading representations or means, including [] fabricated

mortgage assignments."  (SAC, ¶¶ 268-69).

       To state a claim for a violation of the FDCPA, a plaintiff must show that "(1) he/she is a

consumer as defined by the act; (2) the debt arose out of a transaction entered into 'primarily for

personal, family, or household purposes'; (3) the defendant is a 'debt collector' as defined by the

act; and (4) the defendant violated a provision of the FDCPA."  *Fuller v. Lerner, Sampson &*

*Rothfuss*, 2012 U.S. Dist. LEXIS 135538, *14 (N.D. Ohio May 14, 2012) (*Fuller I*); see *Fuller v.*

*Lerner, Sampson & Rothfuss, L.P.A.*, 2012 U.S. Dist. LEXIS 135377 (N.D. Ohio Sept. 21,

2012).  Whether a debt collector violated the FDCPA is determined using the objective test of

whether the "least sophisticated consumer" would be misled by defendant's actions.  *Fuller I*,

2012 U.S. Dist. LEXIS 135538, at *15 (citing *Turner v. Lerner, Sampson & Rothfuss*, 776 F.

Supp. 2d 498, 505 (N.D. Ohio 2011)); *Barany-Snyder v. Weiner*, 539 F.3d 327, 332-33 (6th Cir.

2008) (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)).

       The Rysh Plaintiffs seek recovery under the FDCPA against LPS Defendants for: (1)

executing defective mortgage assignments in 2009; (2) providing LPS Desktop, a "web-based

platform" used by lenders, servicers, and law firms in managing a mortgage; and (3) "directing"

litigation through Desktop and receiving "referral fees" from law firms.  (Doc. # 63, pp. 14, 18,

27-28; SAC, ¶¶ 87-88, 204-24).  LPS Defendants argue that they are not "debt collectors" nor do

to they violate the FDCPA.

       Under the FDCPA a "debt collector" is defined as "any person who uses any

instrumentality of interstate commerce or the mails in any business the principal purpose of

which is the collection of debts, or who regularly collects or attempts to collect, directly or

-16-

indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

LPS Defendants assert that there is no allegation in the SAC that any LPS Defendant was a party

to any of the underlying foreclosure litigation.  Further, Plaintiffs have not alleged that any LPS

Defendant holds any interest in the contested mortgage debts.  Indeed, Plaintiffs acknowledge

that each of the underlying foreclosure actions in dispute was initiated by a Defendant law firm

representing a non-party plaintiff, not by any LPS Defendant.  (SAC, ¶¶ 169, 179, 204, 225).

Therefore, LPS Defendants argue that they are not "debt collectors" under the FDCPA.  The

Court agrees.

Further, LPS Defendants assert that the "mere defective assignment of a mortgage cannot

render LPS a debt collector even if others rely on the assignment in foreclosure litigation."  *See*

*Munger v. Deutsche Bank*, 2011 WL 2930907, at *6 (N.D. Ohio July 18, 2011) (allegedly

defective assignment of mortgage does not render MERS a "debt collector," even though

assignment was used by others in subsequent litigation).  (Doc. # 53, pp. 27-28; Doc. # 69, p.

10).  In response, Plaintiffs cite to cases where a creditor, collection agency or law firm allegedly

executed a false affidavit during the pendency of the foreclosure or debt collection litigation.

(*See* Doc. # 63, pp. 19-20, 23).  As LPS Defendants note, however, here the Rysh Plaintiffs

allege that LPS defectively executed mortgage assignments in 2009 or before (i.e. not during the

pendency of the foreclosure or debt collection litigation) and there are no allegations that LPS

Defendants executed affidavits.  Accordingly, the Court holds that Defendants are not "debt

collectors" for purposes of the Rysh Plaintiffs' FDCPA claim.[9]

_____

[9]LPS and MDK Defendants argue that even if Plaintiffs' allegations supported an
FDCPA claim, the applicable one year statute of limitations bars any such claim.  15
U.S.C. § 1692k(d).  (Doc. # 53, pp. 29-30).  Plaintiffs argue that their FDCPA claims are
timely.  Because the Court dismisses the FDCPA claim on other grounds, it does not

### D.    OCSPA Claim

The Court has already held that all Plaintiffs lack standing to challenge the faulty assignments, and that all of the claims asserted by Whiteman and the Rysh Plaintiffs are also precluded under the doctrines of res judicata and collateral estoppel.  Even had the Court found that Clark had standing, her OCSPA claim still fails.

The OCSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."  O.R.C. § 1345.02(A).  A "consumer transaction" is "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."  O.R.C. § 1345.01(A).  The OCSPA, however, specifically excludes transactions between financial institutions and their customers in its definition of consumer transaction.  *Id.*; *see Slorp v. Lerner*, 2013 U.S. Dist. LEXIS 32538, *20 (S.D. Ohio March 8, 2013); *Perkins v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 149973, *40-41 (S.D. Ohio Oct. 18, 2012) ("OCSPA does not apply to transactions between financial institutions and their customers.  Such transactions are not 'consumer transactions' for purposes of the statute.")

Like in *Slorp*, here the Court finds *DeJohn v. Lerner, Sampson & Rothfuss*, 2012 U.S. Dist. LEXIS 170425 (N.D. Ohio Nov. 30, 2012) on point.  In *DeJohn*, the plaintiffs asserted claims under the OCSPA, alleging that the defendant falsely claimed that its client, Bank of America, was the owner and holder of a mortgage note at the time defendant filed a foreclosure action against them.  In dismissing the OCSPA claim, the court stated:

_____

address the statute of limitations issue.

> When an attorney represents a financial institution in a transaction that is
> exempted from the statute, the attorney is similarly exempt from liability under
> the statute . . . Defendant LSR represented [Bank of America] and Chase, which
> are exempt financial institutions under the Ohio Statute.  Thus, Plaintiff's OCSPA
> claim against LSR fails as a matter of law.

2012 U.S. Dist. LEXIS 170425, *8 (internal citations omitted); *see Gionis v. Javitch,*

*Block & Rathbone*, 405 F. Supp. 2d 856, 869 (S.D. Ohio 2005) (holding an attorney

representing a financial institution which is exempt from the OCSPA is also exempt from

the OCSPA because there was no underlying "consumer transaction.").  Similarly, here,

each of the underlying foreclosures was filed on behalf of a financial institution (i.e. a

national bank) for loans between that institution and Plaintiffs.  These transactions are

excluded from the OCSPA's definition of "consumer transactions."[10]  For the same

reasons as in *Slorp* and *DeJohn*, Plaintiffs' OCSPA claim fails as a matter of law.

Lastly, the SAC asserts in conclusory terms that "Defendants are suppliers as

defined by Ohio Revised Code § 1345.01."  (SAC, ¶ 277).  But, they make no factual

allegations that any Defendant engaged in the business of "effecting" or "soliciting" a

"consumer transaction."  The Court agrees with Defendants that nothing about the

definition of "supplier" under the OCSPA supports the conclusion that those who provide

services to financial institutions in connection with foreclosure of delinquent mortgages

---

[10]The Court notes the Ohio Supreme Court's recent decision in *Anderson v.
Barclay's Capital Real Estate, Inc.*, Slip Opinion No. 2013-Ohio-1933, and the related
notices of supplemental authority filed by the parties (Doc. #s 72, 74, 75).  Although, the
court did not address the question of whether a foreclosure is a "consumer transaction"
under the OCSPA, the court held that transactions between mortgage-service providers and
homeowners are not 'consumer transactions' within the meaning of the CSPA because
there is no 'transfer of an item of goods, a service, a franchise, or an intangible, to an
individual.'" *Id.* at ¶ 15.

-19-

are "suppliers" for purposes of the statute.  The Court also notes that in *Anderson*, the Ohio Supreme Court held that mortgage servicers are not "suppliers" under the OCSPA. Accordingly, Plaintiffs' OCSPA claim fails.[11]

## IV.     Conclusion

For the foregoing reasons, the Court **GRANTS** LPS, MDK and LSR Defendants' motions to dismiss the Second Amended Complaint.  Accordingly, the Court hereby **DISMISSES** Plaintiffs' Second Amended Complaint.

**IT IS SO ORDERED.**

_/s/Dan Aaron Polster  6/6/13_
**Dan Aaron Polster**
**United States District Judge**

---

[11]LPS and MDK Defendants argue that even if the Plaintiffs' allegations in the SAC supported an OCSPA claim against Defendants, the applicable two year statute of limitations bars any such claim.  *See Bucy v. Aurora Loan. Servs., LLC*, 2011 U.S. Dist. LEXIS 28191, *6 (S.D. Ohio March 18, 2011) (quoting O.R.C. § 1345.10(C)).  (Doc. # 53, p. 24-26).  Plaintiffs argue that their OCSPA claims are timely.  Like with the FDCPA claim, because the Court dismisses the OCSPA claim on other grounds, it does not address the statute of limitations issue.